UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE UIPATH, INC. SECURITIES LITIGATION | 1:24-cv-04702 (JPC) (SDA) |

## <u>REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'<br>MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000

*Attorneys for Defendants UiPath,*
*Inc., Robert Enslin, and Ashim Gupta*

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...............................................................................................................................2

    I.    PLAINTIFFS FAIL TO ALLEGE ANY FALSE OR MISLEADING STATEMENTS...................................................................................................................2

        A.    The Execution Statements Were Nonactionable Puffery and Opinions................2

        B.    The SAC Cannot Sufficiently Plead that the Execution Statements Were False or Misleading in Light of UiPath's Contemporaneous Results ...................4

        C.    The Execution Statements Are Not Misleading by Omission.............................6

        D.    UiPath's Risk Disclosures Were Accurate and Complete....................................7

    II.    PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER............8

        A.    Plaintiffs Do Not Plead Access to Specific Information That Contradicted Defendants' Statements ....................................................................8

        B.    Plaintiffs' Remaining Circumstantial Allegations of Scienter Fail....................10

    III.    PLAINTIFFS' CONTROL PERSON CLAIMS FAIL .................................................11

CONCLUSION...........................................................................................................................11

WORD COUNT CERTIFICATION ..........................................................................................12

## TABLE OF AUTHORITIES

PAGE(S)

CASES

*In re Alcatel Sec. Litig.*,
  382 F. Supp. 2d 513 (S.D.N.Y. 2005) ...................................................................... 6

*In re AnnTaylor Stores Sec. Litig.*,
  807 F. Supp. 990 (S.D.N.Y. 1992) ...................................................................... 10

*In re AT&T/DirecTV Now Sec. Litig.*,
  480 F. Supp. 3d 507 (S.D.N.Y. 2020) ...................................................................... 5

*In re Block*, *Inc. Sec. Litig.*,
  2025 WL 2607890 (S.D.N.Y. Sept. 9, 2025) ...................................................................... 6

*Buhrke Fam. Revocable Tr. v. U.S. Bancorp*,
  726 F. Supp. 3d 315 (S.D.N.Y. 2024) ...................................................................... 3

*Chapman v. Mueller Water Prods., Inc.*,
  466 F. Supp. 3d 382 (S.D.N.Y. 2020) ...................................................................... 7

*City of Hialeah Emps.' Ret. Sys. v. Peloton Interactive, Inc.*,
  153 F.4th 288 (2d Cir. 2025) ...................................................................... 7

*Diabat v. Credit Suisse Grp. AG*,
  2024 WL 4252502 (S.D.N.Y. Sept. 19, 2024) ...................................................................... 6

*Freudenberg v. E*Trade Fin. Corp.*,
  712 F. Supp. 2d 171 (S.D.N.Y. 2010) ...................................................................... 10

*Galestan v. OneMain Holdings, Inc.*,
  348 F. Supp. 3d 282 (S.D.N.Y. 2018) ...................................................................... 6, 10

*Gross v. GFI Grp., Inc.*,
  310 F. Supp. 3d 384 (S.D.N.Y. 2018) ...................................................................... 10

*Horoshko v. Citibank, N.A.*,
  373 F.3d 248 (2d Cir. 2004) ...................................................................... 11

*Lucente v. Int'l Bus. Machines Corp.*,
  310 F.3d 243, 260 (2d Cir. 2002) ...................................................................... 11

*Meyer v. Jinkosolar Holdings Co.*,
  761 F.3d 245 (2d Cir. 2014) ...................................................................... 6

*Nandkumar v. AstraZeneca PLC*,
  2023 WL 3477164 (2d Cir. May 16, 2023) ...................................................................... 10

ii

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
  455 Fed. Appx. 10 (2d Cir. 2011) ...................................................................... 9–10

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) .................................................................................. 5

*In re OSG Sec. Litig.*,
  12 F. Supp. 3d 622 (S.D.N.Y. 2014) ............................................................... 10–11

*Plumbers & Pipefitters Nat'l Pension Fund v. Davis*,
  2020 WL 1877821 (S.D.N.Y. Apr. 14, 2020) ......................................................... 6

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
  11 F.4th 90 (2d Cir. 2021) ...................................................................................... 6

*Roofers Loc. No. 149 Pension Fund v. Amgen Inc.*,
  751 F. Supp. 3d 330 (S.D.N.Y. 2024) .................................................................... 6

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
  732 F. Supp. 3d 300 (S.D.N.Y. 2024) .................................................................. 10

*Saskatchewan Healthcare Emp.'s Pension Plan v. KE Holdings Inc.*,
  718 F. Supp. 3d 344 (S.D.N.Y. 2024) .................................................................... 3

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018) ......................................................... 3

*Singh v. Cigna Corp.*,
  918 F.3d 57 (2d Cir. 2019) ...................................................................................... 7

*Stadium Cap. LLC v. Co-Diagnostics, Inc.*,
  2024 WL 456745 (S.D.N.Y. Feb. 5, 2024) ............................................................. 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ............................................................................................ 1, 8

*Tongue v. Sanofi*,
  816 F.3d 199 (2d Cir. 2016) .................................................................................... 4

STATUTES & RULES

15 U.S.C. § 78u-4 ...................................................................................................... 1

Fed. R. Civ. P. 9 ......................................................................................................... 1

## PRELIMINARY STATEMENT

The Opposition confirms that the SAC does not meet the rigorous pleading standards of the PSLRA and Rule 9(b). This Court permitted Plaintiffs to amend only if they could remedy specific "pleading deficiencies." MTD Order at 46.[1] Plaintiffs have failed to do so.

*First*, the SAC does not sufficiently plead any false or misleading statements. The Execution Statements are inactionable corporate optimism. The Opposition offers no standard against which to evaluate their accuracy, and Plaintiffs' shifting attempts to define "execution" only underscore the vague, unverifiable nature of that term. Moreover, even if the Execution Statements were not inactionable puffery, UiPath's unchallenged financial disclosures demonstrate that it *was* "executing" by any relevant metric. Because the Execution Statements were consistent with reasonably available, undisputed data, Plaintiffs cannot meet the PSLRA's pleading burden. Plaintiffs accuse Defendants of advancing a "counterfactual" narrative, but they do not contest the financial results or that they are properly before the Court.

*Second*, the SAC fails to allege facts supporting a strong inference of scienter "at least as compelling as any opposing inference." MTD Order at 32 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007)). Plaintiffs cannot dispute that UiPath's decision to adjust guidance *before* any impact on results is inconsistent with fraudulent intent. While Plaintiffs allude to meetings discussing churn, sales quotas, or individual deals, they still fail to identify *specific* information Defendants knew that *contradicted* their statements.

---

[1] Capitalized terms have the same meaning as in Defendants' opening brief (Dkt. 43) ("Motion" or "Mot."). This reply refers to Plaintiffs' opposition (Dkt. 45) as "Opposition" or "Opp." All emphasis is added and all internal quotation marks and alterations are omitted.

## ARGUMENT

## I.    PLAINTIFFS FAIL TO ALLEGE ANY FALSE OR MISLEADING STATEMENTS

### A.    The Execution Statements Were Nonactionable Puffery and Opinions

As set forth in the Motion, the Execution Statements are inactionable corporate optimism because they are "qualitative and judgment-laden" and "so lacking in specificity or falsifiability that no reasonable investor would rely on them."  Mot. 11–13 (quoting MTD Order at 18, 22).  Plaintiffs' Opposition does not provide any "objective, black-and-white standard" against which to evaluate the statements, nor does it explain how they were sufficiently "determinate [and] verifiable" to be actionable.  MTD Order at 18.

Instead, the Opposition offers unsupported, shifting claims about what "execution" means.  First, the Opposition asserts that the Execution Statements represented that UiPath was "executing multi-year deals with larger customers."  Opp. 14.  But the statements do not mention "multi-year" deals or "larger" customers; instead, they refer to (1) *focusing* on "customers with a higher propensity to buy" and "seeing [] results" in deal and customer "quality," and (2) achieving "better execution."  SAC ¶¶ 27–28.  Next, the Opposition claims the Execution Statements referred not to deal value or duration, but to "retention and not selling deals that were going to churn."  Opp. 15.  But, again, the Opposition offers no support for its shifting interpretation.  Neither Execution Statement referred to churn.[2]

The Opposition seeks to distinguish cases cited in the Motion by asserting that the Execution Statements related to "concrete and measurable areas of … performance."  *Id.* at 16.  But Plaintiffs' changing definition itself shows that this is wrong; there is no single methodology

---

[2] Plaintiffs also suggest that the Execution Statements somehow implicated "ramping" because "ramping" allegedly was a "key" component of the Company's strategy, but this is baseless; the statements the Opposition cites predate the Class Period by several years.  *See* Opp. 12–13 (citing SAC ¶¶ 40–41).

for measuring execution.  Plaintiffs' citations to UiPath's and analysts' varying uses of "executing" or "execution," *id*. at 14 (citing SAC ¶¶ 43–44, 48–50, 52–59), reinforce that those terms are subjective and unspecific.

Moreover, even if one of Plaintiffs' proffered definitions reflected a fixed meaning of the Execution Statements, the statements would still be inactionable.  The terms "large" and "valuable" are themselves "qualitative and judgment-laden."  MTD Order at 22; *see also Saskatchewan Healthcare Emp.'s Pension Plan v. KE Holdings Inc.*, 718 F. Supp. 3d 344, 385 (S.D.N.Y. 2024) (deeming "large" and "growing" inactionable); *Buhrke Fam. Revocable Tr. v. U.S. Bancorp*, 726 F. Supp. 3d 315, 339–40 (S.D.N.Y. 2024) (deeming "valuable" puffery).  To the extent that Plaintiffs take issue with Mr. Gupta's statement about "seeing … results in the deal quality," Opp. 12, 14–16, they likewise offer no means of quantifying or measuring quality. And Plaintiffs never explain how statements purportedly about "not selling deals that *were going to* churn," *id*. at 15, could be anything other than "inherently subjective," and reflective of "management's business judgment" rather than verifiable facts.  MTD Order at 21.

The Opposition also contends that the Execution Statements could not be puffery because they were "explicit responses to analyst questions."  Opp. 14.  But unverifiable, qualitative statements do not become actionable in this circumstance.  *See, e.g.*, *Buhrke*, 726 F. Supp. 3d at 343 n.13 (concluding response to analyst question was puffery).  The cases Plaintiffs cite involved responses to questions seeking clarification or reassurance on the specific points allegedly misrepresented.  *See*, *e.g.*, *In re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889, at *2, *11–12 (S.D.N.Y. Nov. 26, 2018) (statement claimed, in response to "direct questions" about "credit portfolio," that portfolio "remain[ed] very strong and I want to make sure that you understand that point").  By contrast, the questions here requested UiPath's management's

3

qualitative assessment of the business. *See* Ex. 2 (11/30/23 Earnings Tr.) at 18 (asking about "things that are working"); Ex. 9 (3/13/24 Earnings Tr.) at 23 (asking about "what's giving confidence"). They did not address the topics—churn, deal length, and deal value—that Plaintiffs claim the Execution Statements misrepresented.[3]

Finally, the Opposition does not dispute that Mr. Gupta's Execution Statement—which began with "we feel like," SAC ¶ 127—was a statement of opinion. Opp. 16. Plaintiffs claim it is nevertheless actionable, *id.*, but have not sufficiently pled that Mr. Gupta did not hold the belief he professed, *see* Section II.A, *infra*, and cannot plead that the statement was misleading "merely because" he did not mention all alleged "information that ran counter to [his] opinion," *Tongue v. Sanofi*, 816 F.3d 199, 212 (2d Cir. 2016); *see* Section II.A, *infra*.

**B.    The SAC Cannot Sufficiently Plead that the Execution Statements Were False or Misleading in Light of UiPath's Contemporaneous Results**

Even if the Execution Statements were not puffery, the SAC still does not sufficiently plead falsity because undisputed financial results demonstrate that the Company *was* accomplishing its strategy of focusing "on customers with the higher propensity to buy" by adding high-value customers, increasing revenue with existing customers, and delivering growth. *See* Mot. 4–5, 14–15. As the Motion explained, "accurate recounting of past performance cannot serve as the basis for a securities fraud claim." *Id.* at 14 (quoting MTD Order at 20).

The Opposition does not challenge the financial results, and there is no dispute that they are incorporated by reference in the SAC and therefore properly before the Court. *See* Opp. 17–18. Instead, the Opposition seeks to avoid these metrics' import by misconstruing them. *Id.*

- Plaintiffs try to minimize the import of UiPath's ARR growth because ARR "does not reflect churn," Opp. 17, but this misses the point. Although ARR *at a given point in time*

---

[3] Plaintiffs also claim that "[a]nalysts at the time took note of these statements," but cite SAC paragraphs that are not tied to the Execution Statements. Opp. 14 (citing SAC ¶¶ 58, 65).

assumes each existing contract is renewed (i.e., no churn), SAC ¶ 33, that assumption is irrelevant to ARR *growth* from quarter-to-quarter. If meaningful churn were occurring, ARR would shrink, not grow in double digits as it did here, *see* Mot. 17.

- Plaintiffs state that NRR "shows growing customer attrition because NRR decreased each quarter," Opp. 17, but that is incorrect. The metric, clearly defined in UiPath's disclosures, Mot. 4 n.3, never dropped below 100% during the relevant period and therefore never showed any net attrition. Mot. 14.

- Plaintiffs note that UiPath's customers with ARR greater than $1 million remained flat between Q4 FY24 and Q1 FY25. Opp. 17. But the Execution Statements were made during the Q3 and Q4 FY24 earnings calls—both quarters in which UiPath's customers with ARR greater than $1 million increased. Mot. 5.[4]

- Plaintiffs point to declines in UiPath's year-over-year ARR growth and incremental ARR as a percentage of total ARR. Opp. 17–18. But Plaintiffs do not plead why this trend mattered or was inconsistent with execution when annual ARR (the denominator in both calculations) was growing in double digits.

Because the Execution Statements were "consistent with reasonably available data," defendants were not required to "present an overly gloomy or cautious picture of current performance and future prospects." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000). Because accurate numbers were publicly disclosed, investors could form their own informed views as to UiPath's execution. *See* Mot. 17–18; *cf. In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 528–29 (S.D.N.Y. 2020) (defendants not required to disclose additional information about alleged "major churn problem" when "they were already reporting total and net subscription figures"), *aff'd sub nom. Steamfitters Loc. 449 Pension Plan v. AT&T Inc.*, 2022 WL 17587853 (2d Cir. Dec. 13, 2022).

For similar reasons, the Opposition's reference to allegations about specific meetings, comments, or deals and clients that UiPath allegedly lost or "churned," Opp. 10–12, also fail.

---

[4] For this reason, Plaintiffs' references to isolated "churn events" involving *two* purportedly larger customers "in early 2024," Opp. 11 n.2, 22 (citing SAC ¶¶ 47, 108), are irrelevant to the bigger picture.

None of these anecdotal observations undermines the unchallenged *aggregate* financial indicators of execution set forth in documents the SAC incorporates by reference.  Mot. 14–15.[5]

### C.    The Execution Statements Are Not Misleading by Omission

The Opposition also contends that the Execution Statements were misleading by omission because Defendants purportedly did not disclose churn, which Plaintiffs label "the exact opposite of 'deal quality,' 'customer quality,' and 'executing.'"  Opp. 13.  As the Motion explained, these arguments fail.  Mot. 15–18.

*First,* Plaintiffs do not dispute that the Execution Statements did not mention customer churn, sales quotas, or changes to contracting structures, *id.* at 16, and do not explain how the statements could have misled an investor to "believe something *in contradiction* to the [allegedly] omitted facts" on those topics.  MTD Order at 16.  "Plaintiff[s'] theory of falsity defines 'topic' at an untenable level of abstraction," *In re Block, Inc. Sec. Litig.*, 2025 WL 2607890, at *12 (S.D.N.Y. Sept. 9, 2025), and their "vague assertions that a false and misleading impression was created by the alleged omissions" are insufficient, *In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 532 (S.D.N.Y. 2005).  Moreover, even if the Execution Statements had implied something about churn, "making one statement about a topic" does not "trigger a generalized duty … to disclose the entire corpus of [defendants'] knowledge regarding that topic."  *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 103 n.4 (2d Cir. 2021).[6]

---

[5] *Plumbers & Pipefitters National Pension Fund v. Davis* (cited at Opp. 11), has no application here because, in that case, there were no concededly accurate financials supporting the statements at issue; rather, statements about "strong demand" and "organic sales growth" conflicted with specific reports of impending "shortfall[s]" and "pull-forwards" to meet revenue targets.  2020 WL 1877821, at *2–4 (S.D.N.Y. Apr. 14, 2020).

[6] In contrast, Plaintiffs' citations all involved a close connection between the statements and alleged omissions.  *See Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 251 (2d Cir. 2014) (defendants discussed pollution abatement practices but omitted severe "existing [pollution-related] problems"); *Roofers Loc. No. 149 Pension Fund v. Amgen Inc.*, 751 F. Supp. 3d 330, 354 (S.D.N.Y. 2024) (defendants discussed "IRS dispute" but omitted "scope of the [significant] tax-related liability"); *Diabat v. Credit Suisse Grp. AG*, 2024 WL 4252502, at *123 (S.D.N.Y. Sept. 19, 2024) (positive statements about company's balance sheet contradicted by allegedly "then-existing financial (….continued)

6

*Second*, the Opposition's contention that Defendants did not disclose churn is wrong. UiPath *explicitly disclosed* churn, during the *same* earnings calls as the Execution Statements. Mot. 16–17; *Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019). The Opposition argues that these disclosures focused on churn in "the lower end of the market," Opp. 18, but Plaintiffs do not—and cannot, given the undisputed financials, *see* Section I.B, *supra*—plead significant churn among higher-value customers. No reasonable investor would draw an inaccurate conclusion about churn from the Execution Statements.

### D.    UiPath's Risk Disclosures Were Accurate and Complete

The Opposition claims UiPath's risk disclosures were false and misleading because they allegedly both (i) "sa[id] nothing about customer churn," and (ii) described as "hypothetical," Opp. 18–19, the materialized risk of "significant churn," SAC ¶ 134. Both arguments fail. *First*, UiPath disclosed the *risk* of churn; that is what "[d]eclines or significant delays in renewals or purchases" means. *Id.* ¶ 131. *Second*, UiPath disclosed the *existence* of some churn during earnings calls, and—given UiPath's uncontested financials—Plaintiffs could never allege that churn was more impactful than disclosed.[7] Mot. 18; Section I.B, *supra*. Regardless, as in *Chapman v. Mueller Water Products, Inc.*, 466 F. Supp. 3d 382, 406 (S.D.N.Y. 2020), UiPath's high-level risk disclosures "cannot be understood as a guarantee" that UiPath retained all customers.

---

distress"); *Galestan v. OneMain Holdings, Inc.*, 348 F. Supp. 3d 282, 298 (S.D.N.Y. 2018) (positive statements about integration omitted negative impacts of integration efforts).

[7] This provides another basis to distinguish the cases cited in the Opposition. *See City of Hialeah Emps.' Ret. Sys. v. Peloton Interactive, Inc.*, 153 F.4th 288, 301 (2d Cir. 2025) (finding disclosure misleading where warned-of consequences "had already materialized and resulted in significant disruption"); *Stadium Cap. LLC v. Co-Diagnostics, Inc.*, 2024 WL 456745, at *2–3 (S.D.N.Y. Feb. 5, 2024) (finding disclosure discussing "difficulty in forecasting near-term demand" misleading where "demand was already declining rapidly").

## II.    PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER

Plaintiffs' claims independently fail because they have not sufficiently pled scienter.  As an initial matter, Plaintiffs do not dispute that UiPath's decision to preemptively adjust guidance despite meeting earnings is inconsistent with fraudulent intent.  *See* Mot. 19–20.  This Court previously observed that "the more plausible inference" is "UiPath believed its turnaround strategy was proving successful … and promptly revised its guidance once additional information revealed otherwise."  MTD Order at 34.  The Opposition offers no inference nearly as compelling.  *See Tellabs*, 551 U.S. at 314.  Nor are the SAC's new allegations sufficient to plead strong circumstantial evidence of conscious misbehavior or recklessness.[8]  Mot. 20–26.

### A.    Plaintiffs Do Not Plead Access to Specific Information that Contradicted Defendants' Statements

As the Motion explained, the SAC does not remedy Plaintiffs' failure to "plead facts supporting the inference that defendants had access to *specific contradictory information* at the time they made" the Execution Statements.  Mot. 19–26 (quoting MTD Order at 27–28).

Plaintiffs' Opposition nods to the MTD Order, *e.g.*, Opp. 23–24, but does not identify particularized allegations meeting the requirements the Court outlined.  Plaintiffs' list of what they describe as "information … that contradicted the substance" of the Execution Statements reflects only generalized assertions that, "in 2023 and 2024," executives were focused on "minimiz[ing]" churn, "knew all this churn was happening," had "access to data" regarding churn, and attended a meeting where two churn events allegedly were discussed.  Opp. 21–23.  These "churn" allegations are all either too vague or too anecdotal to constitute "specific reports

---

[8] Plaintiffs' SAC, like the FAC, does not sufficiently allege motive.  The Opposition asserts that Individual Defendants sought to "conceal[] bad news in the hope that it will be overtaken by good news," Opp. 29, but the Court has already held that such "generally possessed motives" are "insufficient to support" scienter, MTD Order at 24.

or communications" that "directly contradict[ed]" Defendants' statements about execution on overall strategy. MTD Order at 28. Plaintiffs' allegations about sales quota attainment and deal restructuring are also insufficient, Opp. 22–23, because the SAC offers no basis to connect missed quotas or restructured deals with a lack of execution. Mot. 22–24. The Opposition offers no response other than the generic, unpled assertion that deals were restructured "to rectify … execution issues." Opp. 22. Likewise, Plaintiffs' anecdotal examples of executives criticizing employees and discussing specific deal losses, *see id.* at 7–8, 21–23, do not identify information that contradicts the Execution Statements, as there are "myriad reasons why management might pressure employees to perform better." MTD Order at 30.

Plaintiffs' attempts to rehabilitate the FEs' allegations also fail because most FEs had either no contact with Defendants or no alleged insight into the high-value customers UiPath targeted. Mot. 25–26. Plaintiffs do not contest the latter point, instead citing meetings that certain FEs claim they attended with the Individual Defendants, Opp. 26, without explaining how any information discussed at these meetings contradicted the Execution Statements. *See* MTD Order at 29.[9]

Plaintiffs' cases, unlike the SAC, involve allegations about specific information defendants received that directly contradicted their statements. In *New Orleans Employees' Retirement System v. Celestica, Inc.*, defendants "misrepresented the rising volume of unsold inventory in [company's] North American facilities," even as they participated in meetings and reviewed spreadsheets that "detail[ed] the extent of excess and obsolete inventory." 455 F.

---

[9] For example, one cited paragraph refers to a meeting at which the Individual Defendants allegedly discussed issues in "[e]*merging* [e]nterprise," SAC ¶ 96—i.e., not the "enterprise" segment that UiPath's strategy targeted, but a segment of the smaller customers among whom Defendants expressly acknowledged churn, *see* Mot. 16–17; *see also* Ex. 1 (3/27/24 10-K) at 10 (explaining that UiPath's business targeted "enterprise" customers).

9

App'x 10, at *13 (2d Cir. 2011); *cf. Nandkumar v. AstraZeneca PLC*, 2023 WL 3477164, at *4 (2d Cir. May 16, 2023) (finding no scienter and distinguishing *Celestica* as involving allegations that defendants were "directly informed" of "contrary" information).[10]  Here, Plaintiffs' allegations are far less specific and the relationship between the information Defendants allegedly knew and the Execution Statements is more attenuated.  This is dispositive.  MTD Order at 29–30 (collecting cases).

Finally, Plaintiffs' argument that UiPath initiated changes to its contracting structures and compensation despite "knowing" that the strategy was "ultimately doomed," Opp. 26–27, implausibly assumes that Defendants acted irrationally and should be rejected on that basis.  *See Gross v. GFI Grp., Inc.*, 310 F. Supp. 3d 384, 395–96 (S.D.N.Y. 2018) (scienter not alleged on basis that "fraudulent scheme was doomed to fail"), *aff'd*, 784 F. App'x 27 (2d Cir. 2019).  The FEs' self-interested criticisms of UiPath's business decisions do not support scienter.  Mot. 23.

## B.    Plaintiffs' Remaining Circumstantial Allegations of Scienter Fail

Plaintiffs' other, previously rejected theories also do not support their allegations of scienter.  *First*, the proximity between the alleged corrective disclosures and the at-issue statements does not fix Plaintiffs' deficient pleading.  *See* Mot. 26.  Plaintiffs' citation is inapposite—there, a three-week time interval was one of multiple factors supporting scienter.  *In re AnnTaylor Stores Sec. Litig.*, 807 F. Supp. 990, 1006–07 (S.D.N.Y. 1992).  *Second*, Mr. Enslin's departure does not support scienter, *see* Mot. 26–27, because, unlike in Plaintiffs' case, *In re OSG Securities Litigation*, 12 F. Supp. 3d 622, 632–33 (S.D.N.Y. 2014), the departure was

---

[10] *See, e.g.*, *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 732 F. Supp. 3d 300, 318–19 (S.D.N.Y. 2024) (defendant stated that inventory levels had not changed despite knowing the opposite, including via distributors' reports); *Galestan*, 348 F. Supp. 3d at 291, 301 (defendants stated that they were "pleased with the responses to the new offerings" despite receiving "monthly email[s] … detailing decreases in productivity"); *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 176, 197–98 (S.D.N.Y. 2010) (defendant mischaracterized loans as "superprime" despite being "repeatedly" told "portfolio was insufficiently hedged").

10

not alleged to be related to any wrongdoing. *Third*, Plaintiffs' core operations theory does not tie "the Individual Defendants to specific information contradicting the substance of their statements," as required. *See* Mot. 27. *Finally*, corporate scienter does not apply, *see* Opp. 29, because Plaintiffs have not pled scienter as to any Individual Defendant. *See* Mot. 27.

## III. PLAINTIFFS' CONTROL PERSON CLAIMS FAIL

Plaintiffs concede that their control person claims must be dismissed if they cannot plead a primary violation. *See* Opp. 28–29. They have not done so.

### CONCLUSION

For the reasons above and in the Motion, the SAC should be dismissed with prejudice.[11]

Dated: January 22, 2026
New York, New York

Respectfully submitted,

DAVIS POLK & WARDWELL LLP

*/s/ Edmund Polubinski*
Edmund Polubinski
Patrick Blakemore
Marie Killmond
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5666
Email: edmund.polubinski@davispolk.com
        patrick.blakemore@davispolk.com
        marie.killmond@davispolk.com

*Attorneys for Defendants UiPath, Inc., Robert Enslin, and Ashim Gupta*

---

[11] Plaintiffs' request for leave to amend should be rejected as their failure to state a claim even with the benefit of the MTD Order demonstrates that further amendment would be futile, and they do not attempt to explain how they might amend to state a viable claim. *See Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249 (2d Cir. 2004); *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 260 (2d Cir. 2002).

11

## WORD COUNT CERTIFICATION

I, Edmund Polubinski, certify that the foregoing memorandum of law complies with the word-count limitations set forth in Local Civil Rule 7.1(c). According to the word count of the word-processing program used to prepare the memorandum, and exclusive of the portions of it that are excluded by the rule, there are 3,498 words in the document.

Dated:  January 22, 2026
New York, New York

/s/ Edmund Polubinski
Edmund Polubinski

12